UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  05-40021-FDS |
| | ) | |
| LEO BEATTY | ) | |

## MOTION FOR DISCOVERY

Defendant Leo Beatty hereby moves for an order compelling the government to produce forthwith the discovery requested below.  Mr. Beatty requested the following discovery by letter dated October 21, 2005.  The government responded by letter dated November 11, 2005.  Copies of those letters are attached in chronological order.  The parties are unable to resolve their differences with respect to the following requests for the reasons set forth below.

## ARGUMENT

Mr. Beatty made specific requests for particular categories of exculpatory information the government is required to disclose by rule and by the United States Constitution as interpreted by the United States Supreme Court in cases that include *Kyles v. Whitley*, 514 U.S. 419 (1995), *Brady v. Maryland*, 373 U.S. 83, 87, (1963), *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Osorio*, 929 F.2d 753 (1st Cir. 1991) and *United States v. Bagley*, 473 U.S. 667 (1985).  *See* Letter dated October 21, 2005, attached hereto.

The government generally responded that it agreed to produce only what the Local Rules require:  "[t]he government agrees to disclose exculpatory evidence in its possession, custody or control as that term is defined in the applicable Local Rules and Federal Rules … ."  Letter dated November 11, 2005.  It then responded to each request seeking specific categories of exculpatory information with an objection to the request itself as impermissible and an objection to the extent

the request sought anything beyond the scope of the Local Rules:

> The government objects to this request as improper under Local Rule 116.3(D) and Fed. R. Crim. P. 16(a)(2). … The government is aware of its continuing duty to disclose under Fed. R. Crim. P. 16(c) and will continue to comply with its ongoing discovery obligations. To the extent that this request seeks information beyond the scope of Local Rule 116.2(B)(1)(c), the government objects to this request as improper.

November 11, 2005 letter at 1, 2, attached hereto.

The first two assertions – that a defendant may not make specific requests for categories of exculpatory information and that exculpatory information not set forth specifically in the Local Rules is beyond reach – plainly are contrary to the law. The Local Rules do not limit the universe of the government's exculpatory disclosure obligations to the specific examples of exculpatory information set forth therein, nor do they preclude a defendant from making specific requests for the entire universe of exculpatory information. The third assertion – essentially "trust us, we know what we are required to do" – ought to be rejected out of hand in light of the staggering number of instances where this court and the First Circuit Court of Appeals have documented and lamented the government's failure to adhere to disclosure obligations imposed by the Constitution and the Local Rules.

## 1. A Defendant May Make Specific Requests For Exculpatory Information

The Local Rules do not preclude specific requests for exculpatory information. Local Rule 116.3(D), on which the government relies, precludes a defendant from requesting discovery the government is required to disclose automatically under Rule 116.1: "[a] defendant participating in automatic discovery must not request information expressly required to be produced under Local Rule **116.1**." Local Rule 116.3(D) (emphasis supplied). Local Rule 116.1 does not address exculpatory information and expressly provides that the government's disclosure obligations as to such information are set forth in a separate rule: "the timing and

substance of the disclosure of exculpatory evidence is specifically provided in L.R. **116.2**." *Id.*
(emphasis supplied).  For that reason, the prohibition that a defendant may not request
"information expressly required to be produced under L.R. 116.1" does not preclude specific
requests for exculpatory information, which are the subject of a different Local Rule, 116.2.

There is a stronger reason why the structure of the Local Rules cannot prohibit specific
requests for categories of exculpatory information.  It has long been established that doing so is
the better practice, as the Supreme Court explained in *Agurs*:

> [A] brief comment on the function of the request is appropriate. …
> It [gives] the prosecutor notice of exactly what the defense desired.
> Although there is, of course, no duty to provide defense counsel
> with unlimited discovery of everything known by the prosecutor, if
> the subject matter of such a request is material, or indeed if a
> substantial basis for claiming materiality exists, it is reasonable to
> require the prosecutor to respond either by furnishing the
> information or by submitting the problem to the trial judge. When
> the prosecutor receives a specific and relevant request, the failure
> to make any response is seldom, if ever, excusable.

*United States v. Agurs*, 427 U.S. 97 at 106 (1976).  Surely the Local Rules were not intended to
do away, *sub silencio*, with a long-standing standard of practice articulated by the Supreme Court
– a practice that necessarily focuses and frames the record for appeal in a much stronger way
than the alternative of making a general request for exculpatory information.  Or, worse yet, as
the government would have it here, no request whatsoever.

1.  **The Local Rules Do Not Limit the Scope of Discoverable Exculpatory Information**

The government repeatedly objects to Mr. Beatty's requests to the extent that they "seek[]
information beyond the scope" of a particular Local Rule subpart.  For example, where Mr.
Beatty has requested all promises, rewards and inducements and has highlighted five specific
types of information sought, the government responded that it would produce only what was
articulated in Local Rule 116.2(B)(1)(c) (requiring disclosure of a statement whether any

3

promise, reward or inducement was made, who it was made to and a description of it).  The

government is required to disclose more than that.  *See Kyles, Agurs, Giglio, Osorio, Bagley*

above.  Each of Mr. Beatty's specific requests for exculpatory information are within the scope

of exculpatory information that the government is obligated to disclose under the principles set

forth in that controlling authority.  It is preposterous to suggest that the limited illustrative

language set forth in subpart (B)(1)(c) of a Local Rule of the district court overrides controlling

Supreme Court and appellate precedent.

Aside from the legal deficiency of the government's assertion that it cannot or should not

be ordered to produce more than what the Local Rule requires, there is a practical deficiency as

well.  The government does not articulate how, in its view, Mr. Beatty's requests exceed the

scope of a particular Local Rule subpart.  The government's position is essentially unreviewable

by the court and unenforceable by a defendant.  The court should not permit the government to

hide the ball.  Unless the government can demonstrate how it is exempt from complying with a

specific request for exculpatory information, each of which Mr. Beatty has supported with

controlling authority, the court should order the government to produce the discovery Mr. Beatty

seeks.

**2.  The Court Should Not Accept the Word Of This United States Attorney's Office
That It Understands and Will Comply With Its Exculpatory Evidence Disclosure
Obligations**

This United States Attorney's Office has demonstrated by its actions in case after case

over time that it does not understand or intend to comply with its constitutional and rule-imposed

discovery obligations.  Recently, Judge Saris imposed sanctions for the government's non-

disclosure during the death penalty authorization phase of a murder prosecution that an

eyewitness told investigators that someone other than the defendant was the shooter.  *See*

Memorandum and Order Oct. 31, 2005 at 6-7, *United States v. Monteiro*, Criminal No. 03-10329 (government violated *Brady*, Local Rule 116.2 and two direct orders from Magistrate Judge to produce exculpatory information).

In May 2005, Vincent Ferrara was re-sentenced and set free by Judge Wolf because of the government's "egregious violation of its clear constitutional duty to disclose material evidence negating guilt to defendants." *See* Memorandum and Order Concerning Resentencing, May 13, 2005 at 51, Criminal No. 00-11693. *See also* Memorandum and Order dated April 12, 2005, *United States v. Ferrara*, 1005 WL 903196 (D. Mass. Apr. 12, 2005) (detailing court's findings that the government "violated its clearly established constitutional duty to disclose to [defendant], before trial, important exculpatory information that directly negated his guilt" on charges that he was complicit in a murder).

In August 2004, Chief Judge Young entered an order vacating the conviction of Kenneth Conley and dismissing all charges because the government had withheld crucial exculpatory information and had deprived Conley of a fair trial. *See* Memorandum and Order dated August 18, 2004, *United States v. Conley*, Criminal No. 01-10853-WGY. Chief Judge Young noted that the government's non-disclosure in *Conley* was part of a chronic problem: "[i]n this District, the government has a sorry record stretching back at least a decade of failing to make the disclosures required by law. *See, e.g., United States v. Coppola*, No. 03-10289 (D. Mass. filed Aug. 27, 2003); *United States v. Rodriguez*, No. 01-10206." Memorandum and Order at 19 n.8. The First Circuit upheld Judge Young's grant of a new trial, which it called "a drastic remedy that exacts substantial costs on the administration of justice and taxpayers," but found that the remedy was justified in light of serious doubts about the reliability of a trial infested with constitutional error. *United States v. Conley*, 2005 WL 1684399 (1st Cir. July 20, 2005).

Judge Wolf noted in 2000 that "the failure of the United States Attorney's Office and federal investigative agencies to satisfy their discovery obligations are unfortunately part of a long pattern." *United States v. Diabate*, 90 F. Supp. 2d 140, 144 (D. Mass. 2000). *See also United States v. Salemme*, Sept. 15, 1999 decision at 24-25 and 282-285, Wolf, J.; *United States v. Williams*, Crim. No. 98-10386-MLW, Nov. 22, 1999 Tr. at 116-89; *United States v. Restreppo*, 59 F. Supp. 2d 133 (D. Mass. 1999).

Judge Woodlock put it like this six years before Judge Wolf wrote *Diabate*. Explaining his finding that the government's failure to preserve and disclose Jencks material was not excusable negligence, but a deliberate and knowing failure to do what the law clearly requires, Judge Woodlock wrote:

> To understand why this is so, a page of history is worth a volume of logic. Given the historic pattern in the treatment of disclosure responsibilities in the United States Attorneys Office for this District, it does not require any strain to find that the disclosure responsibilities were not undertaken in good faith. This case presents yet another example of concerted indolence in pursuing disclosure by the United States Attorney's Office and a willful blindness to the failure of its agents who had disclosure duties to fulfill them. This pattern is evident in case law from the Court of Appeals over the past decade.

*United States v. Mannarino*, 850 F. Supp. 57, 71 (D. Mass. 1994).

This United States Attorney's Office's historical failure to comply with its discovery obligations has not escaped the notice of the First Circuit Court of Appeals either. In a case where the government offered "several layers of lame prosecutorial excuses" for its failure to provide required discovery, the court noted that "the government's reluctance freely to furnish automatic discovery materials was chronic." *United States v. Hastings*, 847 F.2d 920, 922 (1st Cir. 1988).

6

**3.  Specific Discovery Requests**

The court should order the government to provide the following exculpatory information. Headings correspond to the requests as they were set forth in Mr. Beatty's October 21, 2005 discovery letter.

**Exculpatory Evidence**

**(b) Promises, rewards and inducements.**

A complete statement of all promises, rewards, or inducements of any kind made to any prospective witness in this case, whether made in connection with this case or in any other case, including, without limitation, the following:

 (1) All information regarding all assurances, express or implied, by the government that it will give or consider giving charge, sentencing or other assistance to a witness (or to a relative, friend, or associate) facing actual or possible criminal charges or non-criminal sanctions, and all suggestions or recommendations that any state government or any other official agency do so.  The information provided should include the nature of the offense, the court in which the charge is pending, the docket number, and a detailed description of the assistance given;

 (2) All statements made during negotiations as to what the government might or might not do depending upon the witness' cooperation;

 (3) All requests for payment or promises, rewards and inducements, or favorable treatment of any kind, made by all witnesses, whether or not such requests were agreed to by the government;

 (4) All statements in the government's possession, custody or control made by all witnesses regarding all promises, rewards and inducements, or favorable treatment of any kind, the witnesses expect to receive or are trying to obtain, whether or not the government has agreed to provide such promises, rewards, inducements and treatment; and

 (5) All information regarding all threats or promises made to each witness or his family to motivate his cooperation.

**Authority.** *Kyles*, *Brady* and *Giglio*; *United States v. Drougas*, 748 F.2d 8, 23 (1st Cir. 1984) ("[e]vidence relating to the impeachment of prosecution witnesses and immunity or other preferential treatment ... is deemed to be exculpatory

within the meaning of the *Brady* rule"); *Owens*, 933 F. Supp. at 87 ("The government has to reveal all promises, rewards and inducements to include the *quid* for the *quo*. And if the *quid pro quo* involves other sovereigns, of course that must be revealed"); *Snell*, 899 F. Supp. at 22 ("[P]romises, rewards and inducements -- is both classic Brady and is specifically mentioned in the Local Rules"); *United States v. Partin*, 493 F.2d 750, 757-60 (5th Cir. 1974) (proper impeachment to question an witness about the dropping of charges against or other preferential treatment given to his family).

**(c) Payments to witnesses.**

All past, anticipated, and foreseeable payments by the government or any law-enforcement agency of money or other things of value to a witness (other than routine witness fees) for information or other assistance provided to the government or other such agency, and all written records of same. Specifically with respect to all cooperating witnesses, defendant requests all ledgers, receipts, vouchers, and other documents which describe the sums paid in any form to or for the benefit of the cooperating witness or his family in this and any other case in which the cooperating witness assisted any federal, state or local governmental agency.

**Authority.** *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315-16 (5th Cir. 1987) ("[t]he government must also make a complete and timely disclosure to the accused of the fee arrangement it has made with the informant"), *cert. denied*, 484 U.S. 1026 (1988). *United States v. Williams*, 954 F.2d 668, 671-72 (11th Cir. 1992) ("jury has a right to know what may be motivating a witness" even if "the amount [of money] paid an informant is felt by the government to be too prejudicial").

**(d) Special arrangements.**

All special arrangements made or facilitated by the government, including but not limited to any special treatment or assistance given to any witness while incarcerated or in connection with or during all debriefings by government investigators and attorneys.

**Government's Response and Argument**

To each subpart set forth above, the government responded as follows:

The government objects to this request as improper under Local Rule 116.3(D) and Fed. R. Crim. P. 16(a)(2). The government has produced such information related to the CW in prior discovery letters dated June 14, 2005 and July 6, 2005. The government is aware of its continuing duty to disclose under Fed. R. Crim. P. 16(c) and will continue to comply with its ongoing discovery

obligations.  To the extent that this request seeks information
beyond the scope of Local Rule 116.2(B)(1)(C), the government
objects to this request as improper.

November 11, 2005 letter at 2-3.  For all of the reasons set forth above, this response is wrong

legally, and unreviewable or enforceable practically.  The court should order the government to

produce all of the exculpatory information sought by this request.

### (e) Credibility.

All information bearing upon the credibility of all witnesses, including,
without limitation:

(1)     all inconsistent statements by a witness, *see Kyles*, 115 S.Ct. at
1569-71; *Owens*, 933 F. Supp. at 87; *United States v. Pellulo*, 14
F.3d 881, 886 (3rd Cir. 1994) ("an IRS memorandum detailing an
interview with [a witness] which set forth facts inconsistent with
the testimony of [the witness] ... qualifies as *Brady* evidence);

(2)     all false statements made by a witness (or omissions of material
facts) during the course of interviews by law enforcement officials,
*see Kyles*, 115 S.Ct. at 1571-73;

(3)     all bias, prejudice, hostility, personal interest, financial interest or
special relationship that could cause the witness to testify in favor
of the government or against any defendant, *see Kyles*, 115 S.Ct. at
1571-72 *Owens*, 933 F. Supp. at 87; *Snell*, 899 F. Supp. at 23;
*United States v. Cooper*, 662 F. Supp. 913, 99 (D.R.I. 1987);

(4)     all evidence of poor memory, in general or with respect to the
events in question, including any statements by a witness
concerning same;

(5)     all physical, mental, visual, or psychiatric treatments and/or
impairments and treatment (including legal or illegal use of drugs
and excessive use of alcohol)  which could affect the witness'
accuracy, and full details concerning same, *see Pennsylvania v.
Ritchie*, 480 U.S. at 60- 61 (evidence of a witness emotional
impairment is discoverable); *United States v. Barrett*, 766 F.2d
609, 615-16 (1st Cir.) (evidence of psychiatric treatment), *cert.
denied*, 474 U.S. 923 (1985); *United States v. Butt*, 955 F.2d 77, 82
(1st Cir. 1992) (mental instability) *United States v. Collins*, 472
F.2d 1017, 1018-19 (5th Cir. 1972)(drug or alcohol addiction or

abuse), *cert. denied*, 411 U.S. 983 (1973); *United States v. Fowler*, 465 F.2d 664, 665-66 (D.C. Cir. 1972) (same).

(6)     all results of all scientific or quasi-scientific tests, such as polygraphs, which fail to conclude that a witness has been completely truthful with respect to any statement, *see Jacobs v. Singletary*, 952 F.2d 1282 (11th Cir. 1992) (government's failure to disclose witness's polygraph testimony which significantly clashed with his testimony at trial was *Brady* violation);

(7)     all evidence that a witness has a poor reputation for telling the truth or has engaged in any conduct probative of untruthfulness, *see Kyles*, 115 S.Ct. at 1572;

(8)     all information tending to show a motive for any  witness to curry favor with the government; and

(9)     all information tending to show that a witness has a relationship with any other witness, informant or government agent.

**Government's Response and Argument**

The government responded to subparts 1-5 as follows:

The government will produce all such information required by the Local Rules and governing case law in its possession, custody, or control 21 days before trial in accordance with Local Rules 116.2(B)(2)(a) and (b).

November 21, 2005 letter at 3.  This response is incomprehensible.  For the reasons set forth above, it is unreviewable and unenforceable.  Mr. Beatty and the court have no idea what the government is agreeing to produce and what is not.  If the government claims that particular information sought is not discoverable, it should say so.  Only then can the parties litigate and the court rule.  Only then can the "substantial costs on the administration of justice and taxpayers" inherent in the retrial upheld in the *Conley* case – the most recent illustration that the government does *not* understand its obligation to disclose credibility evidence – be avoided.

10

The government's response to subpart 7, requesting information about a witness' reputation for truthfulness, is as follows:

> To the extent that this request seeks information described in Fed. R. Evid. 608(a), the government objects to this request as improper. To the extent tat this request seeks information described in Fed. R. Evid. 608(b), all such discoverable information will be provided 21 days before trial in accordance with Local Rule 116.2(B)(2)(f).

November 21, 2005 letter at 4. Rule 608(a) expressly provides that a witness' character for truthfulness may be attacked with reputation and opinion evidence or untruthfulness. Such evidence, if the government were aware of it, would by definition be exculpatory and subject to disclosure. The government's objection to disclosure of such evidence is mystifying. The court should order disclosure.

**(g) Law enforcement personnel.**

All information about whether any law-enforcement agent participating in the investigation or trial of this case has been the subject of an investigation for disciplinary action or criminal prosecution, or the subject of disciplinary action or criminal prosecution, any of which were for conduct involving false statements, perjury, obstruction of justice, receipt of gratuities or violation of rights of a criminal suspect or defendant.

**Authority.** *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976) (error to foreclose discovery of undercover agent's disciplinary records relating to his use of narcotics and failure to submit to urinalysis); *Brooks*, 966 F.2d at 1503 (government's duty to produce exculpatory material extended to local police department's homicide and Internal Affairs Division files); *United States v. Henthorn*, 931 F.2d at 31 (government's failure to examine personnel files upon a defendant's request for production of exculpatory material was reversible error).

**Government's Response and Argument**

The government responded as follows:

> The government objects to producing this information as beyond the scope of proper discovery. *See* Response A(1)(a)(1). Any additional discoverable information regarding trial witnesses will

> be provided 21 days before trial in accordance with Local Rule
> 116.2(B)(2).

November 21, 2005 letter at 4. Mr. Beatty and the court can have no idea what this

response means or what the government views as its disclosure obligations with respect

to the information sought by this request. Surely the government cannot mean that

information about wrongdoing by its law enforcement agent is never discoverable or

somehow would not constitute exculpatory information. To the contrary, Mr. Beatty's

request is supported by ample authority, the requested information clearly is exculpatory

and the court should order its disclosure.

### (i) Contradictory information.

> All evidence tending to undercut in any way the credibility of the
> government's evidence or of the allegations in the indictment.

### Government Response and Argument

The government responded to this request as follows:

> The government objects to this request as improper under Local
> Rule 116.3(D). Any additional discoverable information regarding
> trial witnesses will be provided 21 days before trial in accordance
> with Local Rule 116.2(B)(2).

November 21, 2005 letter at 4. For the reasons set forth above, this request constitutes a

specific request for a category (albeit a broad category) of exculpatory information. Rule

116.3(D) does not preclude such requests because it only applies to the government's

automatic disclosure obligations set forth in Rule 116.1, not its exculpatory information

disclosure obligations which are the subject of Rule 116.2. This request seeks

quintessential exculpatory information.  The court should order the government to

produce it.


                                    LEO BEATTY
                                     By his attorney,

                                    /s/ *E. Peter Parker*
                                    E. Peter Parker
                                     B.B.O. #552720
                                    One Commercial Wharf North
                                    Second Floor
                                    Boston, MA  02110
                                    (617) 742-9099

December 27, 2005

<u>Certificate of Service</u>

        I, E. Peter Parker, certify that I understand that all counsel will receive electronic
notice of the electronic filing of this pleading.

                                     /s/ *E. Peter Parker*
                                    E. Peter Parker

Law Office of
# E. Peter Parker
One Commercial Wharf North
Second Floor
Boston, MA 02110

tel  (617) 742-9099
fax  (617) 742-9989
email  peter@parkerslaw.com
web page     parkerslaw.com

October 21, 2005

Lisa Asiaff
United States Attorney's Office
Untied States Courthouse
One Courthouse Way
Boston, MA 02210

> Re:     *United States v. Beatty,*
>           Criminal No. 05-10021-FDS

Dear Lisa,

Thank you for the discovery you have provided thus far.  On behalf of my client Leo Beatty, I write pursuant to Local Rule 116.3 to request that you provide the following discovery.

As used throughout this motion, the term "government" includes all branches of the Justice Department, including the Bureau of Prisons, as well as all state, local and federal police, investigative and prosecutorial agencies involved in any way in the investigation and prosecution of the crimes charged in the indictment.  *See Kyles v. Whitley,* 514 U.S. 419, 437  (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Osorio,* 929 F.2d 753, 762 (1st Cir. 1991) ("[T]he prosecutor is duty bound to demand compliance with disclosure responsibilities by all relevant dimensions of the government"); *United States v. Owens,* 933 F. Supp. 76, 86 (D. Mass. 1996) (disclosure obligation "governs all the offices of the United States Attorney and the Justice Department itself, ... the Bureau of Prisons ... [and all other governmental agencies including state officers acting as agents of the federal government"); *United States v. Brooks,* 966 F.2d 1500, 1503 (D.C.Cir. 1992) (federal prosecutor had authority to search for exculpatory evidence in Washington, D.C. Metropolitan Police Department's homicide and internal affairs file).

**Discovery Requests**

    **A. Supplement to Automatic Discovery Provisions**

        **1. Exculpatory Evidence.**

In addition to the exculpatory material the government is obligated to produce pursuant to Local Rule 116.2, defendant requests that the government disclose all exculpatory evidence as that term is discussed and defined in *Kyles, supra, Brady v. Maryland*, 373 U.S. 83, 87, (1963), *Giglio v. United States*, 405 U.S. 150 (1972); *Osorio, supra, United States v. Bagley*, 473 U.S. 667, 674-675 (1985), U.S. 419, 437 (1995) and *Owens, supra*.

The exculpatory evidence defendant requests with respect to each government witness in this case includes, but is not limited to, the following:

    **(a) Criminal Records.**

All information about each witness' arrest and conviction record, criminal activity and misconduct, including, but not limited to:

        (1)    The full record (including certified copies) of federal or state convictions, whether misdemeanor or felony. Defendant requests the court to order the government to obtain such criminal records (other than for law enforcement witnesses, and witnesses such as record-keepers). *See Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Ouimette v. Moran*, 942 F.2d 1, 12 (1st Cir. 1991) ("'[N]o matter more material than a complete record of the State's star witness ... to be used for demonstrating the unworthiness of belief of his testimony ... .'");

        (2)    All information known to the government of conduct which constitutes a crime under federal or state law for which the witness could be prosecuted. *See Osorio*, 929 F.2d at 756-58; *Owens*, 933 F. Supp. at 88;

        (3)    A full statement of all criminal prosecutions and investigations against any prospective witness and of all civil or administrative actions or investigations against the witness, regardless of whether or not these cases are the subject of promises, rewards or inducements, *see United States v. Bonanno*, 430 F.2d 1060, 1062 (2d Cir.) (requiring disclosure of indictment of witness so that defendant could investigate all promises), *cert. denied*, 400 U.S. 964 (1970);

        (4)    A full statement of whether any witness was, at any time during the investigation or prosecution of this case, on probation, parole, supervised release or some other form of government

supervision, or had any criminal charges outstanding, *see Davis*, 415 U.S. at 317; and

(5)    The prison records of any witness who has been incarcerated in federal or state prison.

**Authority.** *Kyles*, 115 S.Ct. at 1572; *Davis*, 415 U.S. at 316-17;  *Osorio*, 929 F.2d at 758 (government should have disclosed information that key witness had engaged in extensive drug trafficking for which he had not been charged); *Alford v. United States*, 282 U.S. 687, 693 (1931) (prior criminal conduct is relevant where the witness may have been promised or believed that his cooperation would lead to immunity); *Devose v. Norris*, 867 F. Supp. 836, 849 (E.D. Ark. 1994) (conviction reversed where government failed to disclose prior disciplinary action against witness for theft and making false statements to supervisor and prosecuting attorney while employed as a police officer).

**(b) Promises, rewards and inducements.**

A complete statement of all promises, rewards, or inducements of any kind made to any prospective witness in this case, whether made in connection with this case or in any other case, including, without limitation, the following:

(1)    All information regarding all assurances, express or implied, by the government that it will give or consider giving charge, sentencing or other assistance to a witness (or to a relative, friend, or associate) facing actual or possible criminal charges or non-criminal sanctions, and all suggestions or recommendations that any state government or any other official agency do so. The information provided should include the nature of the offense, the court in which the charge is pending, the docket number, and a detailed description of the assistance given;

(2)    All statements made during negotiations as to what the government might or might not do depending upon the witness' cooperation;

(3)    All requests for payment or promises, rewards and inducements, or favorable treatment of any kind, made by all witnesses, whether or not such requests were agreed to by the government;

(4)    All statements in the government's possession, custody or control made by all witnesses regarding all promises, rewards and inducements, or favorable treatment of any kind, the witnesses expect to receive or are trying to obtain, whether or not the government has agreed to provide such promises, rewards, inducements and treatment; and

(5)     All information regarding all threats or promises made to each witness or his family to motivate his cooperation.

>   **Authority.** *Kyles, Brady* and *Giglio*; *United States v. Drougas,* 748 F.2d 8, 23 (1st Cir. 1984) ("[e]vidence relating to the impeachment of prosecution witnesses and immunity or other preferential treatment ... is deemed to be exculpatory within the meaning of the *Brady* rule"); *Owens,* 933 F. Supp. at 87 ("The government has to reveal all promises, rewards and inducements to include the *quid* for the *quo*. And if the *quid pro quo* involves other sovereigns, of course that must be revealed"); *Snell,* 899 F. Supp. at 22 ("[P]romises, rewards and inducements -- is both classic Brady and is specifically mentioned in the Local Rules"); *United States v. Partin,* 493 F.2d 750, 757-60 (5th Cir. 1974) (proper impeachment to question an witness about the dropping of charges against or other preferential treatment given to his family).

### (c) Payments to witnesses.

All past, anticipated, and foreseeable payments by the government or any law-enforcement agency of money or other things of value to a witness (other than routine witness fees) for information or other assistance provided to the government or other such agency, and all written records of same. Specifically with respect to all cooperating witnesses, defendant requests all ledgers, receipts, vouchers, and other documents which describe the sums paid in any form to or for the benefit of the cooperating witness or his family in this and any other case in which the cooperating witness assisted any federal, state or local governmental agency.

>   **Authority.** *United States v. Cervantes-Pacheco,* 826 F.2d 310, 315-16 (5th Cir. 1987) ("[t]he government must also make a complete and timely disclosure to the accused of the fee arrangement it has made with the informant"), *cert. denied,* 484 U.S. 1026 (1988). *United States v. Williams,* 954 F.2d 668, 671-72 (11th Cir. 1992) ("jury has a right to know what may be motivating a witness" even if "the amount [of money] paid an informant is felt by the government to be too prejudicial").

### (d) Special arrangements.

All special arrangements made or facilitated by the government, including but not limited to any special treatment or assistance given to any witness while incarcerated or in connection with or during all debriefings by government investigators and attorneys.

**(e) Credibility.**

All information bearing upon the credibility of all witnesses, including, without limitation:

(1)     all inconsistent statements by a witness, *see Kyles*, 115 S.Ct. at 1569-71; *Owens*, 933 F. Supp. at 87; *United States v. Pellulo*, 14 F.3d 881, 886 (3rd Cir. 1994) ("an IRS memorandum detailing an interview with [a witness] which set forth facts inconsistent with the testimony of [the witness] ... qualifies as *Brady* evidence);

(2)     all false statements made by a witness (or omissions of material facts) during the course of interviews by law enforcement officials, *see Kyles*, 115 S.Ct. at 1571-73;

(3)     all bias, prejudice, hostility, personal interest, financial interest or special relationship that could cause the witness to testify in favor of the government or against any defendant, *see Kyles*, 115 S.Ct. at 1571-72 *Owens*, 933 F. Supp. at 87; *Snell*, 899 F. Supp. at 23; *United States v. Cooper*, 662 F. Supp. 913, 99 (D.R.I. 1987);

(4)     all evidence of poor memory, in general or with respect to the events in question, including any statements by a witness concerning same;

(5)     all physical, mental, visual, or psychiatric treatments and/or impairments and treatment (including legal or illegal use of drugs and excessive use of alcohol)  which could affect the witness' accuracy, and full details concerning same, *see Pennsylvania v. Ritchie*, 480 U.S. at 60- 61 (evidence of a witness emotional impairment is discoverable); *United States v. Barrett*, 766 F.2d 609, 615-16 (1st Cir.) (evidence of psychiatric treatment), *cert. denied*, 474 U.S. 923 (1985); *United States v. Butt*, 955 F.2d 77, 82 (1st Cir. 1992) (mental instability) *United States v. Collins*, 472 F.2d 1017, 1018-19 (5th Cir. 1972)(drug or alcohol addiction or abuse), *cert. denied*, 411 U.S. 983 (1973); *United States v. Fowler*, 465 F.2d 664, 665-66 (D.C. Cir. 1972) (same).

(6)     all results of all scientific or quasi-scientific tests, such as polygraphs, which fail to conclude that a witness has been completely truthful with respect to any statement, *see Jacobs v. Singletary*, 952 F.2d 1282 (11th Cir. 1992) (government's failure to disclose witness's polygraph testimony which significantly clashed with his testimony at trial was *Brady* violation);

(7)     all evidence that a witness has a poor reputation for telling the truth or has engaged in any conduct probative of untruthfulness, *see Kyles*, 115 S.Ct. at 1572;

(8)     all information tending to show a motive for any  witness to curry favor with the government; and

(9)     all information tending to show that a witness has a relationship with any other witness, informant or government agent.

## (f) Inconsistent statements.

All inconsistent statements between different witnesses  concerning any facts material to the investigation, defense or prosecution.  *See Kyles*, 115 S.Ct. at 1569-71; *Owens*, 933 F. Supp. at 87.

## (g) Law enforcement personnel.

All information about whether any law-enforcement agent participating in the investigation or trial of this case has been the subject of an investigation for disciplinary action or criminal prosecution, or the subject of disciplinary action or criminal prosecution, any of which were for conduct involving false statements, perjury, obstruction of justice, receipt of gratuities or violation of rights of a criminal suspect or defendant.

> **Authority.**  *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976) (error to foreclose discovery of undercover agent's disciplinary records relating to his use of narcotics and failure to submit to urinalysis); *Brooks*, 966 F.2d at 1503 (government's duty to produce exculpatory material extended to local police department's homicide and Internal Affairs Division files); *United States v. Henthorn*, 931 F.2d at 31 (government's failure to examine personnel files upon a defendant's request for production of exculpatory material was reversible error).

## (h) Promises, rewards and inducements to defendants.

All promises, rewards or inducements offered, and all threats made, to each defendant in order to elicit information from that defendant.

## (i) Contradictory information.

All evidence tending to undercut in any way the credibility of the government's evidence or of the allegations in the indictment.

## 2.  Identification Procedures

In addition to the discovery the government is obligated to produce under Local

Rule 116.1(C)(1)(f), defendant requests disclosure of the following information

concerning all identifications and/or identification procedures conducted during the

investigation of this matter:

  (a)    the names and addresses of all persons asked to attempt to identify a
         person in an identification procedure conducted by or known to the
         government;

  (b)    the result of each such identification procedure, including without
         limitation, identification of the defendant, failure to identify anyone, or
         identification of someone other than a defendant as being or most
         closely resembling the perpetrator of the charged offense, *see United
         States v. Ash*, 413 U.S. 300, 318-19 (1973) ("[s]election of the picture of
         a person other than the accused, or the inability of a witness to make
         any selection, will be useful to the defense in precisely the same
         manner that the selection of a picture of the defendant would be useful
         to the prosecution);

  (c)    the method of identification, for example, photographic display,
         corporeal display, voice identification, etc. *United States v. De Jesus-
         Rios*, 990 F.2d 672, 678 (1st Cir. 1993) (impermissibly suggestive show-
         up procedure);

  (d)    the name of the person(s) who conducted each  identification procedure
         and all persons present during it;

  (e)    the date and location of each identification procedure;

  (f)    the specific photographs or depictions of people used in each and every
         identification procedure, *see Stovall v. Denno*, 388 U.S. 293, 302 (1967)
         (the size of the photo array or line-up directly affects the suggestivity
         of an identification procedure);

  (g)    the name, address and date of birth of each individual who was
         photographically or corporeally involved in each identification
         procedure;

  (h)    the names and addresses of all eyewitnesses who provided information
         regarding the individual(s) sought to be identified;

  (i)    the specific description of the individual(s) sought to be identified and
         the date the description was given; and

  (j)    all discrepancies among descriptions made by eyewitnesses to the
         individual(s) sought to be identified and the actual appearance of a
         defendant. *See Kyles*, 115 S.Ct. at 1569-71.

**Authority:** *Manson v. Brathwaite*, 432 U.S. 98, 111-12 (1977).

## B. Additional Discovery Requests

### 1. Rule 16(a)(1)(E)

Defendant requests inspection, copies, duplicate photographs and production of all books, papers, documents, data, photographs, tangible objects, buildings or places within the government's possession, custody or control that are material to preparing a defense, intended for use in the government's case-in-chief or obtained from or belonging to the defendant.

### 2. Rule 16(a)(1)(F) and (G)

Pursuant to Fed. R. Crim. P. 16(a)(1)(F), defendant requests that the government produce all reports of examinations and tests and that the government permit defendant to inspect and to copy or photograph all such results or reports in the possession, custody or control of the government, of which the government knows or through due diligence should know of, and which are material to preparing the defense or intended by the government for use in its case-in-chief.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), defendant requests that the government disclose, no later than 45 days before trial, all testimony the government intends to offer under Fed. R. Evid. 702, 703 or 705 in its case in chief at trial, including but not limited to the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications.

> **Authority.** *United States v. Richmond*, 153 F.R.D. 7 D. Mass 1994) ("[I]n order to serve the purposes of the Rule, the expert's written summary must be disclosed to defendant's counsel not less than forty-five calendar days before trial").

### 3. Preservation and Production of Notes

Defendant requests that the government preserve all contemporaneous notes, memoranda, statements, reports, surveillance logs tape recordings and other documents memorializing matters relevant to the charges contained in the indictment made by or in the custody of any law enforcement officer whose agency at the time was formally participating in an investigation intended, in whole or in part, to result in a federal indictment, including all raw notes whether or not the substance of such notes is incorporated in a written report, and all rough drafts of reports. Defendant requests production of all notes described in Local Rule 116.9 and herein to the extent such notes constitute Jencks Act or *Brady* material.

> **Authority:** 18 U.S.C. § 3500; *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (requiring law enforcement agents to preserve original notes taken during interviews with prospective government witnesses or with an accused in order "to permit courts to play their

proper role in determining what evidence must be produced pursuant to the Jencks Act or other applicable law"); *Brady*, *supra*.

### 4.  Early release of Jencks Act material

Defendant requests that the government produce Jencks Act material no later than 21 days before trial.  This request pertains only to Jencks Act material that is not exculpatory.  Exculpatory witness statements should, of course, be turned over as part of automatic discovery.

> **Authority.**  *Snell*, 799 F. Supp. at 24 ("nothing in the statute, preempts the court's ability, consistent with its obligations over case management, to order earlier disclosure than required by the Act"); *United States v. Campagnuolo*, 592 F.2d 852, 859 n. 3 (5th Cir. 1979)(early release is "salutary practice"); *United States v. Hubbard*, 474 F. Supp. 64 (D.D.C. 1979)(holding government to promise of early Jencks production); *United States v. Narcisco*, 446 F. Supp. 252, 270-71 (E.D. Mich. 1977)(ordering pretrial disclosure to promote efficiency and fairness).

### 5.  Telephone Records

All telephone subscriber, use and toll call records obtained during and/or as a result of the investigation in this case.

Please call me if you have any questions.

Very truly yours,

/s/ *E. Peter Parker*
E. Peter Parker



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*                    *United States Courthouse, Suite 9200*
                                                    *1 Courthouse Way*
                                                    *Boston, Massachusetts 02210*

November 11, 2005

***VIA FACSIMILE & MAIL***
***Facsimile: (617) 742-9989***

E. Peter Parker, Esq.
One Commercial Wharf North
Second Floor
Boston, MA 02110

**Re:    United States v. Leo Beatty, Criminal No. 4:05-cr-40021-FDS**

Dear Peter:

        In accordance with Local Rule 116.3 and Fed.R.Crim.P. 16(c), the government hereby responds to your discovery letter dated October 21, 2005.

        First, having "opted in" to discovery under the Local Rules, it is improper according to Local Rule 116.3(D) to request items expressly required to be produced under Local Rule 116.1. Your letter includes such categories. Additionally, certain categories of materials that are discoverable are nonetheless not required to be produced until 21 days before trial. Your letter includes many such items as well. I object to all such requests in your letter as outside of the proper scope of discovery. All of the government's specific responses set forth below are made subject to these general objections.

### A(1). Exculpatory Evidence

        The government agrees to disclose exculpatory evidence in its possession, custody, or control as that term is defined in the applicable Local and Federal Rules within the time periods required by Local Rule 116.2(B). Each of the defendant's specific requests for exculpatory evidence are discussed in turn:

E. Peter Parker, Esq.
November 11, 2005
Page 2 of 6

### A(1)(a). Criminal Records

(1)     As stated in my automatic discovery letter dated June 14, 2005, except with
        respect to the cooperating witness ("CW") referenced throughout the discovery
        produced to date, the government is unaware that any of its named case-in-chief
        witnesses have criminal records. If the undersigned attorney becomes aware of
        any such criminal records, she will advise you at once. With respect to the CW,
        although I have declined to reveal the CW's identity at this time in accordance
        with Local Rule 116.6, the government will produce a redacted copy of the CW's
        criminal record promptly. The government is under no obligation, however, to
        produce *certified* copies of criminal records, and therefore declines to comply
        with that portion of your request.

(2)     All such information in the government's custody, possession, or control will be
        provided 21 days before trial in accordance with Local Rule 116.2(B)(2).

(3)     To the extent that this request seeks more than the information required by Local
        Rule 116.2(B)(1)(c) (promises, rewards, or inducements), this request is governed
        by Local Rules 116.2(B)(2)(e) and (f), and is therefore not due until 21 days
        before trial. To the extent that this request seeks discovery beyond that required
        by the aforementioned Local Rules, the government declines to comply with this
        request.

(4)     All such information in the government's custody, possession, or control will be
        provided 21 days before trial in accordance with Local Rules 116.2(B)(2)(e) and
        (f).

(5)     The government declines to comply with this discovery request. The government
        is under no obligation to produce such prison records and the defendant has cited
        no authority stating otherwise.

### A(1)(b). Promises, Rewards and Inducements

(1)     The government objects to this request as improper under Local Rule 116.3(D)
        and Fed.R.Crim.P. 16(a)(2). The government has produced such information
        related to the CW in prior discovery letters dated June 14, 2005 and July 6, 2005.
        The government is aware of its continuing duty to disclose under Fed.R.Crim.P.
        16(c) and will continue to comply with its ongoing discovery obligations. To the
        extent that this request seeks information beyond the scope of Local Rule
        116.2(B)(1)(c), the government objects to this request as improper.

2

E. Peter Parker, Esq.
November 11, 2005
Page 3 of 6

     (2)     *See* Response A(1)(b)(1) above.

     (3)     *See* Response A(1)(b)(1) above.

     (4)     *See* Response A(1)(b)(1) above.

     (5)     *See* Response A(1)(b)(1) above.

### A(1)(c). Payments to Witnesses

*See* Response A(1)(b)(1) above.

### A(1)(d). Special Arrangements

*See* Response A(1)(b)(1) above

### A(1)(e). Credibility

(1)     The government will produce all such information required by the Local Rules and governing case law in its possession, custody, or control 21 days before trial in accordance with Local Rules 116.2(B)(2)(a) and (b).

(2)     The government will produce all such information required by the Local Rules and governing case law in its possession, custody, or control 21 days before trial in accordance with Local Rule 116.2(B)(2)(a).

(3)     The government will produce all such information required by the Local Rules and governing case law in its possession, custody, or control 21 days before trial in accordance with Local Rules 116.2(B)(2)(a) and (d).

(4)     The government will produce all such information required by the Local Rules and governing case law in its possession, custody, or control 21 days before trial in accordance with these Local Rules.

(5)     The government will produce all such information required by the Local Rules and governing case law in its possession, custody, or control 21 days before trial in accordance with Local Rules 116.2(B)(2)(a) and (g).

(6)     No such tests were conducted in this matter.

3

E. Peter Parker, Esq.
November 11, 2005
Page 4 of 6

    (7)    To the extent that this request seeks information described in Fed.R.Evid. 608(a), the government objects to this request as improper. To the extent that this request seeks information described in Fed.R.Evid. 608(b), all such discoverable information will be provided 21 days before trial in accordance with Local Rule 116.2(B)(2)(f).

    (8)    To the extent that this request seeks information described in Local Rule 116.2(B)(1)(c), *see* Response A(1)(b)(1) above. To the extent that this request seeks other information, the undersigned attorney does not understand the request. If you wish to clarify it, I will be happy to confer with you regarding same.

    (9)    The government objects to this request as unclear and beyond the scope of information that is properly discoverable pursuant to the Local Rules and federal law.

### A(1)(f). Inconsistent Statements

The government agrees to produce all such information that is discoverable under Local Rule 116.2(B)(2)(c) and that is in its possession, custody, or control 21 days before trial in accordance with the Local Rules.

### A(1)(g). Law Enforcement Personnel

The government objects to producing this information as beyond the scope of proper discovery. *See* response A(1)(a)(1). Any additional discoverable information regarding trial witnesses will be provided 21 days before trial in accordance with Local Rule 116.2(B)(2).

### A(1)(h). Promises, Rewards and Inducements to Defendants

The government objects to this request as improper and inapplicable to this matter. Your client is the only defendant in this case.

### A(1)(i). Contradictory Information

The government objects to this request as improper under Local Rule 116.3(D). Any additional discoverable information regarding trial witnesses will be provided 21 days before trial in accordance with Local Rule 116.2(B)(2).

4

E. Peter Parker, Esq.
November 11, 2005
Page 5 of 6

### A(2).  Identification Procedures

The government has produced information related to identifications under Local Rule 116.1(C)(1)(f) in its discovery letter dated June 14, 2005. The government is aware of its continuing duty to disclose under Fed.R.Crim.P. 16(c) and will continue to comply with its ongoing discovery obligations. The government otherwise objects to Requests A(2)(a) – (j) as beyond the scope of Local Rule 116.1(C)(1)(f).

### B.  Additional Discovery Requests

### B(1).  Rule 16(a)(1)(E)

The government has disclosed information responsive to Fed.R.Crim.P. 16(a)(1)(E) in its discovery letters dated June 14, 2005, June 22, 2005, and July 6, 2005. The undersigned attorney also recently became aware of additional discovery in connection with this matter. The government is in the process of gathering that discovery, which will be Bates-stamped and produced to you promptly.

### B(2).  Rule 16(a)(1)(F) and (G)

The government has disclosed information responsive to Fed.R.Crim.P. 16(a)(1)(F) in its discovery letters dated June 14, 2005 and June 22, 2005. As noted above, however, the undersigned attorney recently became aware of additional discovery in connection with this matter. The government is in the process of gathering that discovery, which will be Bates-stamped and produced to you promptly.

With respect to information discoverable under Fed.R.Crim.P. 16(a)(1)(G), the government objects to your request for disclosure no later than 45 days before trial. The government agrees to produce such discovery on the date ordered by the Court or, if no such order is entered, 30 days before trial, at which time the government requests that the defendant disclose reciprocal discovery under Fed.R.Crim.P. 16(b)(1)(C).

### B(3).  Preservation and Production of Notes

The government acknowledges its obligation to preserve all notes and reports required to be preserved under the Local Rules and governing case law. To the extent that this request seeks *production* of *Brady* material, the government will produce all such material in its possession, custody, or control 21 days before trial in accordance with the Local Rules. To the extent that this request seeks *Jencks* information, the government objects to this request and incorporates by reference Response B(4) below.

E. Peter Parker, Esq.
November 11, 2005
Page 6 of 6

### B(4). Early Release of *Jencks* Act material

The government has produced *Jencks* Act material with its discovery letters dated June 14, 2005, June 22, 2005, and July 6, 2005. With respect to other *Jencks* Act material, the government objects to defendant's request for early release of same.

In further response, however, the government notes that although it objects to this request for purposes of Local Rule 116.3(B), it will likely produce *Jencks* material that is in its possession, custody, or control earlier than required.

### B(5). Telephone Records

As noted above, the undersigned attorney for the government recently became aware of some additional discovery, which is in the process of being gathered for Bates-stamping and production. This discovery includes telephone subscriber information related to the defendant. The government will produce this discovery promptly upon gathering and Bates-stamping same.

If you have any questions about any of this information or wish to discuss this case with me, please call me at (617) 748-3268.

Sincerely,

MICHAEL J. SULLIVAN
United States Attorney

By:  */s/ Lisa M. Asiaf*

LISA M. ASIAF
Assistant U.S. Attorney

cc: Clerk's Office (D. Mass.)

6

Department of Justice
United States Attorney's Office
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

Main Reception: (617) 748-3100

Michael J. Sullivan
United States Attorney
District of Massachusetts



# Facsimile Transmission Cover Page

**TO:**     E. Peter Parker, Esq.

## SENSITIVE U.S. ATTORNEY FACSIMILE COMMUNICATION

The information contained in this facsimile message, and any and all accompanying documents constitutes sensitive information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.

**FROM:**     AUSA Lisa Asiaf

Sender's Phone No.: (617) 748-3268

Sender's Receiving Fax No.: (617) 748-3965

Recipient's Fax No.: **(617) 742-9989**

Date: Nov. 11, 2005      Pages: 7 (including cover sheet)

Re: **LEO BEATTY – Response to your Discovery Letter**

**MEMO:** Dear Peter:

     Enclosed is the government's response to your discovery letter. As noted therein, I just learned about some additional discovery (including a state search warrant, some telephone records, and some additional reports related to Beatty's arrest). I am in the process of gathering this additional discovery, which I will Bates-stamp & get to you promptly.

     Regards, Lisa