# United States Court of Appeals
## For the First Circuit

No. 06-2481

UNITED STATES OF AMERICA,

Appellee,

v.

LEO BEATTY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Torruella, Wallace,˙ and Lipez,
Circuit Judges.

Lisa M. Asiaf, Assistant U.S. Attorney, with whom Michael J.
Sullivan, United States Attorney, was on brief, for appellee.
Bruce Green for appellant.

August 12, 2008

˙Of the Ninth Circuit, sitting by designation.

**LIPEZ, Circuit Judge.**  In light of a congressional amendment to the sentencing guidelines in 2003, this case requires us to consider for the first time the scope of the government's discretion in deciding whether to file a motion for an additional one-level decrease in the defendant's base offense level for acceptance of responsibility.

Leo Beatty pleaded guilty to four counts of distribution of cocaine base, after he sold drugs to an undercover agent working for the Drug Enforcement Administration ("DEA").  Although he entered a timely guilty plea, he contested at the change of plea hearing the weights of the drugs involved and the characterization of the substance as "crack cocaine," admitting only that it was "cocaine base."  Initially, he also contested - or appeared to contest - one of the prior drug felonies included in the government's submission pursuant to 21 U.S.C. § 851.

At sentencing, the district court awarded Beatty a two-point reduction in his base offense level under the sentencing guidelines pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility.  However, the court did not award the third-level reduction under § 3E1.1(b) because the government did not file a motion recommending such a reduction.  Beatty claims that because he entered a timely guilty plea and because the government did not engage in any trial preparation, the government did not have any legitimate rationale for withholding the motion for a third-level

reduction. Beatty also claims that his sentence of 210 months, the low-end of the guideline range that applied in his case, is unreasonable. For the reasons set forth below, we reject both claims and affirm the sentence imposed by the district court.

**I.**

On four occasions in February and March 2005, Beatty sold cocaine base to an undercover DEA agent. On a fifth occasion in May 2005, the undercover agent arranged another transaction with Beatty and agents arrested him before the transaction was completed. Beatty was subsequently indicted by a federal grand jury for one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and three counts of distribution of more than 5 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).[2] On August 30, 2005, the government filed an information pursuant to 21 U.S.C. § 851, notifying Beatty that the enhanced penalties under 21 U.S.C. § 841(b) would apply due to prior felony drug convictions in 1992 and 1994. After lengthy negotiations with the government, Beatty pleaded guilty, without a plea agreement, to all four counts on May 3, 2006.

During the plea colloquy, Beatty objected to the government's summary of the factual basis for each of the charges,

---

The indictment also charged the defendant with aiding and abetting, in violation of 18 U.S.C. § 2, in connection with each distribution count. The government agreed to drop the aiding and abetting claims during the plea colloquy.

-3-

stating that he was "not admitting either to weight or to the
substance being crack." He stated that he would only admit "to the
substance being cocaine base." The court determined,
provisionally, that the weight and identity of the substance as
"crack" were relevant only to sentencing. As such, the court
allowed the plea to proceed and reserved those issues for
resolution during the sentencing hearing. The court stated that if
the government, upon reconsideration, moved to vacate the plea on
the ground that the defendant had not sufficiently admitted to the
factual basis for the charges, the court would revisit the issue.

Later in the plea colloquy, the court addressed the prior
convictions set forth in the § 851 information. First, Beatty
agreed that he was the same person who had been convicted on August
4, 1994 of cocaine trafficking and on August 15, 1994 of conspiracy
to traffic cocaine. Beatty then denied that he was the same person
who was convicted in 1992 of conspiracy to traffic cocaine. After
conferring with his attorney, Beatty next objected to the treatment
of the two 1994 convictions as separate convictions. The following
exchange ensued:

> COURT: All right. I guess my - my answer to
> that is how - what effect this is going to
> have on your sentence, that is --
> BEATTY: No, it's because --
> COURT: --one pleading or two is going to be up
> to your lawyer to argue and for me ultimately
> to decide.
> BEATTY: The only --
> COURT: All - all I'm trying to figure out now
> is - is - is do you admit that you were

> convicted on these two different occasions of
> this offense?
> BEATTY: Yes, your honor.
> COURT: All right. And then you deny that you
> were convicted on the 1992 offense, right?
> BEATTY: 1990 - when?
> COURT: '92
> BEATTY: Oh, '92, yes, your Honor. That was
> conspiracy, correct?
> COURT: Yes.
> BEATTY: Yes, your Honor.

Following this exchange, the court informed Beatty that any formal

challenge to the convictions identified in the § 851 filing would

have to be made prior to sentencing.

In its initial presentence report ("PSR"), the Probation

Office found that Beatty was responsible for 86.30 grams of cocaine

base, which would result in a base offense level ("BOL") of 32.

See U.S.S.G. § 2D1.1(c)(4). This calculation was superceded,

however, by Beatty's career offender status under the guidelines.

See id. § 4B1.1(b). Based on a statutory maximum sentence of 30

years, Beatty's BOL was thus 34. See id. The PSR then deducted

---

The four completed transactions involved 4.8 grams, 7.1
grams, 19.9 grams, and 19.0 grams respectively. During the arrest,
the undercover agent seized 24.2 grams from Beatty. A subsequent
search of Beatty's residence, pursuant to a search warrant, yielded
an additional 11.3 grams.

Because Beatty did not admit to the drug weights (and the
government did not prove them beyond a reasonable doubt to a jury),
the statutory maximum sentence was governed by the default penalty
provision in 21 U.S.C. § 841(b)(1)(C) rather than the elevated
penalty provision in § 841(b)(1)(B), which is applicable when the
drug quantity includes more than 5 grams of cocaine base. As a
result, the statutory maximum was 30 years rather than life
imprisonment. The government acknowledged at the sentencing
hearing that the court was bound by the lower maximum sentence.

two levels from the BOL for acceptance of responsibility under
§ 3E1.1(a), producing a total offense level ("TOL") of 32. The
Probation Office noted that the government had advised that it
would not file a motion for a further third-point reduction under
§ 3E1.1(b) because of Beatty's refusal to accept responsibility for
distributing the "crack" form of cocaine base in amounts exceeding
five grams. Based on a TOL of 32 and Beatty's career offender
criminal history category of VI, the PSR calculated Beatty's
guideline sentencing range ("GSR") to be 210-262 months.

Beatty objected to all references to "crack" cocaine in
the PSR and objected to the calculation of his sentence with
reference to the guidelines applicable to cocaine base, a substance
defined by the sentencing guidelines to include only "crack"
cocaine. See U.S.S.G. § 2D1.1(c) cmt. n.(D).[5] Beatty also
objected to the government's refusal to move for a third-level
reduction for acceptance of responsibility, noting that he had
entered a timely guilty plea and that the government had not
engaged in trial preparation. Beatty did not contest the 1992
conviction in any written submission.

---

[5]In this circuit, the term "cocaine base" as used in 21 U.S.C.
§ 841 encompasses any form of cocaine base, including but not
limited to crack. United States v. Medina, 427 F.3d 88, 92 (1st
Cir. 2005); United States v. López-Gil, 965 F.2d 1124, 1134 (1st
Cir. 1992) (opinion on rehearing). The more narrow definition in
the note accompanying U.S.S.G. § 2D1.1(c) is relevant only at
sentencing. Medina, 427 F.3d at 92 n.3.

-6-

The government objected to the Probation Officer's conclusion that Beatty was entitled to any adjustment for acceptance of responsibility because, in its view, Beatty had "frivolously contested" that the drugs at issue were "crack," the drug weight, and the 1992 conviction described in the § 851 information. In its sentencing memorandum, the government further contended that, because Beatty had falsely denied the 1992 conviction while under oath, a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, was warranted. The government calculated the applicable GSR at 324-405 months.

Prior to the sentencing hearing, the government invested significant time and resources in gathering evidence to establish the drug type and weight and the authenticity of Beatty's 1992 conviction. The government prepared transcripts of the phone calls between the undercover agent and Beatty, which provided some evidence that the substance he sold was "crack" because Beatty had described his technique for "cooking" the drugs. The government also worked with the undercover agent to prepare a detailed affidavit recounting the details of the transactions to show that the substance involved was crack cocaine. The undercover agent was also prepared to testify orally at the sentencing hearing. The government also had the drugs analyzed by a forensic chemist who prepared a report concluding that, based on their appearance, the drugs were crack cocaine and setting forth the drug weights. The

-7-

government further expended resources to confirm that Beatty was
the person named in the 1992 conviction, including arranging for a
fingerprint expert to be available to testify at the sentencing
hearing.

At the sentencing hearing, the court reviewed the written
evidence presented by the government and heard arguments from both
parties as to drug type and weight.` The court found by a
preponderance of the evidence "that the substance at issue was, in
fact, crack cocaine, a form of cocaine base" and "that the drug
weights involved as to Counts 2, 3, and 4, which were 7.1 grams,
19.9 grams and 19.0 grams, respectively, all exceed 5 grams."`
Turning to the 1992 conviction, the government stated that just
prior to the hearing Beatty had informed the government that he was
retracting his challenge to the conviction.` Beatty's counsel
stated that Beatty's apparent denial of the 1992 conviction at the
plea colloquy was due to confusion. The court had asked a series
of questions calling for an affirmative answer and then asked an

---

`Beatty did not offer any evidence and did not contest the
accuracy or credibility of the government's evidence. He argued
only that the government's evidence was insufficient to meet its
burden.

`Because Beatty's career offender status superceded the base
offense level calculated from the drug weights, this factual
finding by the district court has no operative effect on Beatty's
sentence in this case.

`As a result of this retraction, the government withdrew its
recommendation that a two-level increase for obstruction of justice
be applied to Beatty's GSR calculation.

-8-

additional question calling for a negative answer. Counsel
contended that Beatty was simply confused by the exchange and had
not intended to deny the conviction. Further, counsel argued that
the denial was immaterial because Beatty had admitted to the 1994
convictions and only one prior drug conviction is required to
invoke the enhanced penalty provisions of § 841(b)(1)(C). The
court then found that the 1992 conviction belonged to Beatty.

        The court next turned to the acceptance of responsibility
reduction under U.S.S.G. § 3E1.1.  The court stated that it would
grant Beatty the two-level reduction under § 3E1.1(a), but it would
not award the third level pursuant to § 3E1.1(b) because there was
no government motion.  The court explained:

> It seems to me that the government certainly
> can take the position that it's not going to
> move under - for the third level under (b) if
> the defendant requires it to be put to a lot
> of trouble by contesting facts that ought not
> genuinely to be in dispute; that is to say,
> I'm not finding that the defendant frivolously
> contested these issues, and, therefore, am
> awarding the second level, but I also
> understand that the government in good faith
> could take a contrary view having required its
> agents and experts and so forth to come to
> Court and be put to a considerable amount of
> trouble.
> . . .
> I guess what I'm saying is I don't find a due
> prccess violation by the - on the part of the
> government if it's taking the position that

Beatty's counsel sought to characterize the second conviction
as merely a sentencing issue rather than an "acceptance of
responsibility" question because the second conviction was not
necessary as a factual predicate for his plea under § 841(b)(1)(C).

> the defendant did falsely deny these facts,
> and I'm going to leave it there.

The court then calculated Beatty's GSR at 210-262 months. The government recommended a sentence of 210 months. The court heard from Beatty's counsel, who advocated for a below-guideline sentence due to Beatty's age and military service, and from Beatty, who spoke of his struggles to succeed in the face of racism. The court concluded that these considerations were outweighed by other factors under 18 U.S.C. § 3553(a), including the seriousness of the offense and Beatty's repeated convictions for the same crime. Accordingly, the court imposed a low-end guideline sentence of 210 months. The instant appeal ensued.

## II.

This case presents an issue of first impression in this circuit regarding the effect of a 2003 congressional amendment to the federal sentencing guidelines governing reductions for acceptance of responsibility. See Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003); U.S.S.G. § 3E1.1(b) (2003). Under the prior version of § 3E1.1(b), a defendant who had received a two-level reduction for general acceptance of responsibility under § 3E1.1(a) and whose offense level was 16 or greater, was entitled to receive an additional one-level reduction if he had "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby permitting the

-10-

government to avoid preparing for trial and permitting the court to allocate its resources efficiently." We held that this guideline provision "[did] not confer any discretion on the sentencing judge to deny the extra one-level reduction so long as the subsection's stated requirements [were] satisfied." United States v. Talladino, 38 F.3d 1255, 1264 (1st Cir. 1994). We further held that a defendant's decision to contest matters solely related to sentencing would not disqualify him from the § 3E1.1(b) reduction. See United States v. Cunningham, 201 F.3d 20, 24 (1st Cir. 2000) (characterizing forfeitures as "elements of the sentence, rather than a part of the criminal offense itself" and holding that the the district court erred in relying on the defendant's refusal to accept forfeiture allegations to deny him the § 3E1.1(b) decrease). However, in 2003 Congress amended the text of § 3E1.1(b) to read:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

(Emphasis added.)

---

With the PROTECT Act, Congress exercised its authority to directly amend the sentencing guidelines by statute. The statute

Every other circuit that has considered this revised provision has characterized the 2003 amendment as making the award of a § 3E1.1(b) reduction contingent on the government's decision to file a motion requesting the reduction. See United States v. Drennon, 516 F.3d 160, 162-63 (3d Cir. 2008); United States v. Newson, 515 F.3d 374, 378 (5th Cir. 2008), cert. denied, 128 S. Ct. 2522 (2008); United States v. Pacheco-Díaz, 506 F.3d 545, 552 (7th Cir. 2007); United States v. Gunn, 215 Fed. Appx. 785, 791-92 (11th Cir. 2007)(unpublished), cert. denied, 128 S. Ct. 265 (2007); United States v. Chase, 466 F.3d 310, 315 (4th Cir. 2006); United States v. Sloley, 464 F.3d 355, 360 (2d Cir. 2006), cert. denied, 127 S. Ct. 1900 (2007); United States v. Espinoza-Cano, 456 F.3d 1126, 1136 (9th Cir. 2006); United States v. Moreno-Trevino, 432 F.3d 1181, 1185-86 (10th Cir. 2005); United States v. Wattree, 431 F.3d 618, 623-24 (8th Cir. 2005); United States v. Smith, 429 F.3d 620, 628 (6th Cir. 2005). We join them in holding that the revised provision gives the government discretion - akin to its discretion under the substantial assistance provision of the guidelines, see Wade v. United States, 504 U.S. 181, 185-86 (1992) (describing prosecutorial discretion under U.S.S.G. § 5K1.1) - to determine

_____

also added a second paragraph to Application Note 6 stating that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing."

whether to file a such a motion.  Under this standard, a defendant
who challenges the prosecutor's refusal to file a motion under the
revised § 3E1.1(b) must show that the refusal "'was based on an
unconstitutional motive'" or "'was not rationally related to any
legitimate Government end.'"   Moreno-Trevino, 432 F.3d at 1185
(quoting Wade, 504 U.S. at 185-86); Espinoza-Cano, 456 F.3d at 1138
("[T]he defendant must present objective evidence of an improper
motive on the part of the government.").

        Both the government and Beatty agree that the language in
§ 5K1.1 is analogous to the revised text of § 3E1.1(b) and that the
standard adopted in Wade should be extended to the review of the
government's decision to withhold a motion under § 3E1.1(b).
Section 5K1.1 provides that "[u]pon motion of the government
stating that the defendant has provided substantial assistance in
the investigation or prosecution of another person who has
committed an offense, the court may depart from the guidelines."
Both provisions condition adjustment on the government's decision
to file a motion.  The Supreme Court has explained that § 5K1.1
serves as a limit on the sentencing court's authority to adjust the
guideline calculation.  Wade, 504 U.S. at 186-87.  On the other
hand, the provision confers on the prosecutor nearly unfettered
discretion to determine whether to move for the adjustment, based
on a "rational assessment of the cost and benefit that would flow
from moving."  Id. at 187.  Thus, the Court held that § 5K1.1 gives

the government "a power, not a duty, to file a motion when a defendant has substantially assisted."  Id. at 185.  Put differently, the Court explained that "although a showing of assistance is a necessary condition for relief [under § 5K1.1], it is not a sufficient one."  Id. at 187.

Following Wade, we have held that "[f]or the most part, the government has unbridled discretion in deciding whether to file such a motion."  United States v. Sandoval, 204 F.3d 283, 285 (1st Cir. 2000).  The government's discretion is constrained in only two situations:

> The first involves cases in which the government's failure to move for a substantial assistance departure is based on some constitutionally impermissible factor (say, race or religion), or is "not rationally related to [some] legitimate Government end." The second involves cases in which the government explicitly undertakes to make, or to consider making, such a motion.

Id. at 286 (quoting Wade, 504 U.S. at 185-86) (internal citation omitted).  Beatty agrees that this standard now applies to our review of the government's discretion under the revised acceptance of responsibility provision.  He attempts to meet this standard by asserting that the only "legitimate Government end" that the government may consider in exercising its discretion under § 3E1.1(b) is the avoidance of trial preparation.  Thus, he contends that the government's decision to withhold the motion in his case, where no trial preparation took place, was not rationally

-14-

related to a legitimate government end. Relying on our pre-2003 case law, he argues that "[t]he touchstone of § 3E1.1(b) is trial preparation, not sentencing issues." In effect, he claims that entering a timely guilty plea so as to permit the government to avoid preparing for trial is both a necessary and a sufficient condition for receiving the reduction.

This highly circumscribed definition of "legitimate government end" is wholly inconsistent with the plain language of the revised provision, which, like its analogue in § 5K1.1, creates a "power, not a duty" to move for a reduction. If the government were required to move for the third-level reduction when the defendant enters a timely plea, thereby saving the government the expense of trial preparation, the amended language requiring that the government file a motion would be a nullity. Such a holding would effectively reinstate the pre-2003 version of § 3E1.1 by rendering entitlement to the motion automatic if the defendant received the reduction under § 3E1.1(a) and entered a "timely" plea.

Beatty avers that this is the appropriate result. He claims that the 2003 amendment was intended to change the "mechanism" for granting the third-level reduction but was not intended to alter the criteria for such a reduction. We disagree. As amended, the touchstone of § 3E1.1 is no longer trial preparation, but rather the presence of a government motion for the

-15-

third-level reduction. See United States v. Borer, 412 F.3d 987, 991 (8th Cir. 2005) ("The PROTECT Act amendment made it materially more difficult for [defendant] to earn a reduction for acceptance of responsibility by adding a requirement that the government authorize the court to grant a third level reduction."); cf. Sandoval, 204 F.3d at 285 ("The sine qua non for a section 5K1.1 departure is the filing of a motion to that effect by the government."). Now, rather than turning on the timeliness of the plea and the avoidance of trial preparation, the entitlement to the third-level reduction turns on whether both the court and the government are satisfied that "the acceptance of responsibility is genuine." Sloley, 464 F.3d at 360. The new version of § 3E1.1 is "crafted and structured in a manner that divides the power to reduce a defendant's offense level for acceptance of responsibility between the sentencing court and the prosecutor." Id. at 359. This division of power "implicitly contemplates situations in which a court may find acceptance of responsibility while the government prosecutor may not." Id. That is precisely what happened in this case: the district court concluded that Beatty had not falsely denied or frivolously contested relevant conduct, but acknowledged that the government reasonably disagreed with that conclusion. See U.S.S.G. § 3E1.1 cmt. n.1(a) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to

-16-

be true has acted in a manner inconsistent with acceptance of responsibility.").

Beatty argues that "[i]t is certainly appropriate for the Defendant to contest issues which may affect his sentence and it is not a legitimate end for the government to restrict that." However, the government's decision not to move for the third-level reduction does not "restrict" the defendant's right to contest issues relevant to his sentence. In addressing this same argument, the Tenth Circuit explained that "when a defendant chooses to trade the exercise of such rights for a reduction in sentence, this does not mean that the government has 'interfered' with the right." United States v. Blanco, 466 F.3d 916, 919 (10th Cir. 2006). Although a defendant has a right to contest the drug weights, for example, he may exercise that right either by requiring the government to prove the weight of the drugs or "by waiving that right in exchange for a lower sentence." Id.; see also Newson, 515 F.3d at 377 (upholding the government's discretion to withhold a § 3E1.1(b) motion solely because defendant would not agree to the appellate waiver in the proposed plea agreement).

To be sure, the government's broad discretion to withhold the motion would create a disincentive for challenging issues relevant to sentencing, but such disincentives are not improper. See Espinoza-Cano, 456 F.3d at 1137-38 (holding that there is nothing improper about using a § 3E1.1(b) motion as an incentive to

-17-

plea bargain); accord Corbitt v. New Jersey, 439 U.S. 212, 218 (1978) ("[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid."). The defendant is free to weigh the disincentive against the benefit that may result from contesting the sentencing issues, just as the government, in exercising its discretionary authority, may rationally weigh "the cost and benefit that would flow from moving" for the third-point reduction. See Wade, 504 U.S. at 187. Here, the government, for its part, rationally concluded that the benefit of moving for a third-level reduction was outweighed by the costs.[11]   This conclusion is adequately justified by the government's reasonable determination that Beatty frivolously contested the drug type and weight in the face of overwhelming factual evidence and falsely denied the 1992 conviction. As such, the district court did not err in refusing to grant the third-level reduction under § 3E1.1(b).

_____

[11] In this case, Beatty actually benefitted from contesting the weight of the drugs involved, even though it cost him the additional one-level reduction under § 3E1.1(b). Because he did not admit to distribution of more than 5 grams of cocaine base, he was sentenced under the lower statutory maximum of 30 years rather than life imprisonment.   Compare 21 U.S.C. § 841(b)(1)(B) with § 841(b)(1)(C). This had the collateral effect, under the career offender guidelines, of lowering his BOL from 37 to 34.   See U.S.S.G. § 4B1.1(b). This three-level differential provided Beatty with a much greater benefit than the one-level benefit that would have been available if the government had filed the § 3E1.1(b) motion.

-18-

## III.

Beatty also argues that his sentence, despite being at the low end of the guideline range, is substantively unreasonable.[2] A defendant who wishes to attack "an in-guideline-range sentence as excessive" must "adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be 'reasonable.'" United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006). Beatty's argument falls far short of this standard. He avers that the district court failed to properly consider his age, military service, employment record, and his allegedly low risk of recidivism in calculating his sentence. We disagree. The district court expressly considered these factors, noting that "to some extent" Beatty was an unusual defendant and that "at least in the abstract . . . the risk of recidivism for someone who is 48 and with the defendant's background is lower than - than ordinary." The court then weighed these observations against the fact that Beatty had "not been deterred by his prior convictions or incarcerations." The court also concluded that "the age factor can be turned around," noting that "[t]here is no question that [Beatty is] a mature adult and that this is not a youthful mistake." The

---

[2]Beatty does not assert that any procedural error occurred in his sentencing.

district court thus properly considered the defendant's arguments for a variance and reasonably rejected them.  As such, we see no "powerful mitigating reason" to conclude that the resulting sentence was unreasonable.

Affirmed.